Argued September 15, order vacated; remanded for imposition of
sentence November 24, 1975, reconsideration denied January 7,
petition for review allowed March 9, 1976.

STATE OF OREGON, *Respondent, v.* ROBERT
DALE STALHEIM (No. 16-992), *Appellant.*
542 P2d 913

*J. Marvin Kuhn,* Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

*Rhidian M. M. Morgan,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and FORT and THORNTON, Judges.

FORT, J.

Defendant was charged with two counts of criminally negligent homicide after an automobile accident in which two people were killed. He waived his right to a jury trial and was convicted on both counts by the court. Defendant appeals, asserting two assignments of error: first, the trial court's denial of his motion for a judgment of acquittal, and, second, the condition of probation requiring defendant to pay

through the court $2,500 at the rate of $50 per month as restitution to the man whose wife and daughter were killed in the accident, but who was not himself a victim of it. Defendant contends that since there was no judicial hearing to determine the amount he was to pay, he was deprived of property without due process of law.

■ We find that the first assignment of error has no merit. Although there was a conflict in testimony, there was evidence that the accident was caused by the attempt of defendant, an inexperienced driver, to pass on a blind curve in heavy traffic after consuming alcohol. The trier of fact was entitled to believe this evidence.

We turn to the second assignment of error.

■ Here the record at the time of sentencing indicates that the attorney for the father-husband in a civil claim against defendant, Stalheim, had been offered $20,000 by way of settlement. It is unclear whether this represented insurance policy limits or whether it had been actually received. At the sentencing hearing the prosecutor made the following statement:

"My second point is with respect to a letter I received—and the Court apparently received the original copy—from Douglas Fellows, who represents Paul Mackey, whose wife and daughter were killed as a result of the defendant's negligence, with respect to the proposal the defendant be made to pay, as a condition of probation, a specified amount of $2,500 at the rate of $25 per month. * * *"

This is the only indication in the record of the source of the amount defendant was to pay.

In imposing the sentence the court said:

"Mr. Stalheim, would you stand, please.

"Now, Mr. Stalheim, the question here is wheth-

er the court places you on probation or whether the court sends you to prison. I'll tell you straight out that if I put you on probation, that one of the requirements of probation would be that you reimburse this family in the amount of $2,500 at the rate of $50 a month. And, if I extend probation to you on those terms, will you accept it and pay this money or not? Just tell me now, because I want to know.

"THE DEFENDANT: I don't know about $50 a month. Mr. Fellows, the lawyer for Mr. Mackey, said $25.

"THE COURT: Well, the maximum term of probation is five years, and you couldn't pay $2,500 in five years at the rate of $25 a month. And, if you can do anything, you ought to be able to pay $50 per month, in my judgment.

"MR. STALHEIM: All I can say is I can give it a try. Right now, I'm not working, but I'm seeking for a job.

"THE COURT: Well, you're going to have to do better than try; you're going to have to do it, because your freedom, as far as I'm concerned, is going to be conditioned on your paying $50 a month until $2,500 has been paid."

Thus it is clear that no evidence concerning the determination of the amount of unliquidated damages —or liquidated—was before the court.

ORS 137.540(10) authorizes a sentencing court to require as a condition of probation that the probationer shall:

"Make reparation or restitution to the aggrieved party for the damage or loss caused by offense [sic], in an amount to be determined by the court."

The narrow question raised here is whether the husband and father of the deceased accident victims was

"the aggrieved party" within the meaning of the statute.

This question has not yet been answered in Oregon. Conditions of probation under ORS 137.540(10) that have been approved by Oregon courts include the following: a requirement that the defendant pay to the original owner money he had embezzled, *State v. Ludwig,* 218 Or 483, 344 P2d 764 (1959), and a requirement that the defendant repay $2,600 which he had fraudulently received from the welfare department, *State v. Foltz,* 14 Or App 582, 513 P2d 1208, Sup Ct *review denied* (1973). In each of these cases, the "aggrieved party" was the person who had suffered direct financial loss and who was the immediate victim of the crime charged in the indictment.

The federal and the former New York probation statutes are similar to Oregon's and have been interpreted to limit "aggrieved party." Crimes and Criminal Procedure, 18 USC § 3651 (1970), provides that as a condition of probation the defendant

> "[m]ay be required to make restitution or reparation to aggrieved parties for actual damages or loss caused by the offense for which conviction was had * * *."

"Aggrieved party" was construed in *United States v. Follette,* 32 F Supp 953 (ED Pa 1940), and Annotation, 97 ALR2d 798 (1964), as part of a virtually identical statute. Act of Mar. 4, 1925, ch 521, § 1, 43 Stat 1259. The court stated that, in addition to the federal government,

> "* * * the phrase 'aggrieved party or parties' included within its scope such persons as the owner of the contents of a letter stolen from the mail, the person defrauded by a scheme involving use of the mails, the bank from which funds have been embezzled, and the innocent person to whom a counterfeit note has been passed. Each of these persons

has been directly and financially aggrieved by the criminal acts of the defendants involved." 32 F Supp at 955.

The court held that a surety that had bonded defendant against embezzlement was an aggrieved party when it covered funds the defendant embezzled. *See also: Karrell v. United States,* 181 F2d 981 (9th Cir), *cert denied* 340 US 891 (1950); *United States v. Berger,* 145 F2d 888 (2d Cir 1944), *cert denied* 324 US 848 (1945).

The former New York Code of Criminal Procedure § 483 authorized the court to place the defendant on probation with the condition that he

"* * * make restitution or reparation to the aggrieved parties in an amount to be fixed by the court, not to exceed the actual losses or damages caused by his offense * * *."

In *People v. Grago,* 24 Misc 2d 739, 204 NYS2d 774 (Oneida County Ct 1960), "aggrieved party" was defined:

"The aggrieved party in a criminal action can only refer to the party whose rights, personal or property, were invaded by the defendant as a result of which criminal proceedings were successfully concluded." 204 NYS2d at 777.

The court held that the term did not include the insurer of a bank that had repaid funds the defendant had deposited after embezzling them, but did include the union from which the funds were embezzled.

■ The federal and New York interpretations are not binding on Oregon, but they are persuasive since the statutes are similar. In contrast, the Washington and California statutes, which have been interpreted broadly,[1] are very different from Oregon's. California

---

[1] *See,* People v. Miller, 256 Cal App 2d 348, 64 Cal Rptr 20 (1962); People v. Alexander, 182 Cal App 2d 281, 6 Cal Rptr 153 (1960); State v. Gunderson, 74 Wash 2d 226, 444 P2d 156 (1968); and State v. Summers, 60 Wash 2d 702, 375 P2d 143 (1962).

Penal Code § 1203.1 (West 1970) provides that the court "may provide for reparation in proper cases * * *." The Washington statute, RCW 9.92.060 (1961), states that as a condition of suspension of sentence

"* * * the court may require the convicted person to make such monetary payments, on such terms as the court deems appropriate under the circumstances, as are necessary * * * (2) to make restitution to any person or persons who may have suffered loss or damage by reason of the commission of the crime in question * * *."

Neither statute uses "aggrieved party" or indicates any intent to limit the persons to whom restitution or reparation may be ordered as long as they suffered some loss in connection with the crime. Both statutes give the sentencing court wider discretion in imposing terms of probation than the Oregon statute does. The language in cases interpreting these statutes therefore does not apply directly to the Oregon statute.

Our statute authorizes reparation or restitution to "the" aggrieved party, focusing on the person whose rights the defendant directly invaded.

■ We conclude that "the aggrieved party" under ORS 137.540(10) does not encompass family members of homicide victims.

In view of that conclusion we do not reach the question of whether defendant's due process or equal protection[2] rights were violated when the amount of restitution he was to make was determined as it was here.

We vacate the judgment order and remand for imposition of sentence.

---

[2] See, Fuller v. Oregon, 417 US 40, 94 S Ct 2116, 40 L Ed 2d 642 (1974), aff'g 12 Or App 152, 504 P2d 1393, Sup Ct review denied (1973).

SCHWAB, C. J., concurring.

I concur in the majority opinion. However, I wish to note that I do not believe that we can find the comfort of supporting authority in the cited opinions from other jurisdictions. None of them considers the question which we have answered in the negative: Is a person who has a cause of action for wrongful death an aggrieved person within the meaning of the statute we are here construing?

That statute is drawn so loosely that it thrusts upon us the basic policy decision of the desirability of a condition of probation like that imposed in this case. While the position urged in dissent is not without appeal, my conclusion—on policy grounds—is the same as the majority's.

THORNTON, J., dissenting.

I agree with the majority that defendant's first assignment cannot be sustained. I disagree, however, with the second conclusion of the opinion, namely, that the provisions of ORS 137.540 do not authorize the trial judge to impose the challenged condition of probation.

In my view this conclusion is in error on two counts:

First, it appears to me that the majority is ignoring entirely the broad grant of authority contained in the introductory provision of ORS 137.540, which begins by stating:

"The court shall determine * * * the conditions of probation, which may include, as well as others, that the probationer shall * * *"

and then proceeds to list 12 conditions. It is obvious from the quoted language that the enumeration of the 12 conditions in ORS 137.540 was not intended to be exclusive. Notwithstanding this clear expression of

legislative intent to give the trial judge broad discretion in imposing conditions to probation, *see, State v. Allen,* infra, the majority proceeds to interpret condition 10 (ORS 137.540(10)) as the limit of the court's power in imposing restitution as a condition to probation. This, I think, is erroneous.

Additionally, the majority has interpreted condition 10 much too narrowly by giving a very restrictive, and again erroneous, construction to the term "aggrieved person." In reaching this result the opinion relies upon a series of federal court decisions which strictly construe the federal probation statute, which is a more narrowly drawn statute than ours, plus a New York decision.

Second, I believe that the restrictive rule announced by the majority is contrary to the trend of appellate decisions in other states. While as previously indicated some of the federal courts have taken a very restrictive view of the probationary authority of their trial courts, this is not the trend elsewhere. Some of these cases are abstracted in the margin.[1]

[1] In State v. Gunderson, 74 Wash2d 226, 444 P2d 156 (1968), where the defendant had been convicted of negligent homicide, the Supreme Court of Washington approved a requirement that the defendant pay $7,500 to the parents of a deceased child who was killed as the result of being struck by defendant's automobile.

Similarly, in Shenah v. Henderson, 106 Ariz 399, 476 P2d 854 (1970), the Supreme Court of Arizona approved a condition that the defendant pay $2,500 to the parents of a deceased girl killed in a car accident.

In People v. Alexander, 182 Cal App2d 281, 6 Cal Rptr 153 (1960), the court gave its approval to a condition that defendant who was convicted of arson pay $139,000, which represented the sums paid by the various fire insurance companies. The record showed that the defendant was a wealthy man.

In People v. Stacy, 64 Ill App2d 157, 212 NE2d 286 (1965), where defendant was convicted of attempted murder, the Illinois court approved a $100 a month payment where the victim had lost a leg, even though a civil action for damages was pending against the defendant.

I believe that we should apply the liberal rule as declared in our statute and allow the trial judge a broad range of discretion here as was done by our Supreme Court in *State v. Ludwig,* 218 Or 483, 344 P2d 764 (1959), and as we did in *State v. Foltz,* 14 Or App 582, 513 P2d 1208, Sup Ct *review denied* (1973). In *Foltz,* defendant Foltz was convicted of attempting to obtain $120 unlawfully from the state welfare department. The circuit court, as a condition of probation, required defendant to make restitution to the welfare department in the amount of $2,600. The defendant attacked this condition on a variety of grounds including the contention that the above condition was beyond the court's authority. All of defendant's contentions were rejected by this court on appeal.

Summarizing, so long as the conditions imposed by the court come within the terms of our statutes and violate no constitutional provisions, the same should not be subject to challenge. After all the defendant is not required to accept probation if he has objections to the conditions fixed by the court. As this court observed in *State v. Allen,* 12 Or App 455, 457, 506 P2d 528, Sup Ct *review denied* (1973):

"* * * In assessing the reasonableness of pro-

---

In People v. McClean, 130 Cal App2d 439, 279 P2d 87 (1955), the condition was that the defendants give "value received" to the persons defrauded. This condition was subsequently modified to require the defendants to pay off civil judgments totaling $56,-700 to the persons defrauded. This condition was approved by the appellate court.

In Taylor v. State, 419 SW2d 647 (Tex Cr App 1967), the Texas court approved an order of restitution to a third party of $1,000 at a rate of $10 a week after a DUIL conviction.

In Comm'r of Motor Vehicles v. Lee, 254 Md 279, 255 A2d 44 (1969), the Maryland court said that payment of money by way of restitution may be imposed without a verdict as to the amount.

Finally, in State v. May, 93 Idaho 343, 461 P2d 126 (1969), the Idaho Supreme Court approved a condition involving conviction of forgery. The condition required the payment of $4,000 plus interest to the complaining witness.

bation conditions a reviewing court will bear in mind the purposes sought to be served by probation and will recognize the wide discretion of the trial court in such matters * * *."

I would affirm.