STATE OF HAWAII, Plaintiff-Appellee, *v.* PAULA K. JOHNSON, Defendant-Appellant

NO. 9924

(CRIMINAL NO. 58258)

DECEMBER 27, 1985

LUM, C.J., NAKAMURA, PADGETT, HAYASHI AND WAKATSUKI, JJ.

OPINION OF THE COURT BY WAKATSUKI, J.

Defendant-Appellant Paula K. Johnson was indicted for Theft in the First Degree, Hawaii Revised Statutes (HRS) § 708-831(1)(b)[1] and Forgery in the Second Degree, HRS § 708-852. Defendant was convicted by a jury for the lesser included offense of Theft in the Third Degree[2] and for forgery as charged. Defendant was sentenced to five years probation for the forgery conviction. Defendant was also sentenced to six months probation for the theft conviction with a special condition that she make restitution to the victim in the amount of $5,406.33 less $75.00 in a manner to be determined by the Adult Probation Division. Defendant appeals the restitution order of the sentence. We affirm in part and remand for further proceedings.

I.

Defendant worked as a travel agent for Century Travel Hawaii, Inc., owned by Sharon Wong. Wong testified that Defendant issued airline tickets without collecting the fares which amounted to $13,479.00 of which $6,009.01 was repaid. At the trial, a promissory note[3] in the amount of $5,406.33 signed by Defendant in favor of Century Travel Hawaii, Inc. was admitted into evidence.

At the hearing held on April 24, 1984, on the Motion for Correction or Reduction of Sentence, the following colloquy took place between the trial judge and Mr. Gillin, Defendant's attorney:

---

[1]HRS § 708-831 (1976) in relevant part reads:
(1) A person commits the offense of theft in the first degree if he commits theft:
(a) By obtaining property from the person of another; or
(b) Of property or services the value of which exceeds $200[.]

[2]HRS § 708-833 (1976) Theft in the third degree:
(1) A person commits the offense of theft in the third degree if he commits theft of property or services.
(2) Theft in the third degree is a petty misdemeanor.

[3]The pertinent paragraph of the promissory note reads as follows:
"It is also understood that Paula Johnson will be prosecuted for embezzlement, which is a criminal offense, if this note is not paid in full as agreed. If three payments are missed, then cause will be made to turn this note over to the Justice Department."

THE COURT: Was there a promissory note executed by your client?

MR. GILLIN: There was a promissory note prepared and there was a promissory note apparently signed by my client and I believe it was for $5,400, of which $75 has been paid so far.

THE COURT: What happened, the adult probation department determined that that balance, namely $5,400 less $75 was not the —

MR. GILLIN: That apparently is the dispute between Miss Johnson and the adult probation authorities. As far as I see it, Your Honor, an amicable resolution of that amount will put this case to a close.

THE COURT: Is that the balance that you think ought to be paid, namely the promissory note, less the payments made?

MR. GILLIN: From what I see, yes, Your Honor, and I would so represent as an officer of the Court.

THE COURT: Well we will proceed, and we will get the adult probation department involved in order to find out how they arrived at what they arrived at.

Tr. April 24, 1984 at 3.

At the continued hearing on the Motion For Correction or Reduction Of Sentence held on May 8, 1984, the following colloquy took place between the trial judge and the attorneys present:

THE COURT: In any event, I recall that that promissory note was not disputed.

MS. LE DUC: That's correct, Your Honor. In fact, the Defendant testified, regarding the promissory note, that she indeed had signed it, acknowledged it as her own.

THE COURT: Mr. Sakamoto here represented her because he was present at trial.

MS. LE DUC: Your Honor, I do have a copy of the promissory note, a xerox copy. And it shows a face amount of five thousand four hundred and six dollars and thirty-three cents.

THE COURT: And what is the amount of restitution that was paid thus far?

MR. GILLIN: Your Honor, my client indicates that she has paid seventy-five dollars to date.

THE COURT: That is my understanding.

Tr. May 8, 1984 at 8.

## II.

Defendant argues that the restitution amount should have been $50.00 in light of Defendant being found guilty of committing theft in the third degree and that the trial court erroneously construed the restitution statutes, HRS § 706-605(1)(e)[4] and HRS § 706-624(2)(i)[5] too broadly in construing crime to mean criminal "conduct."

The total amount of the restitution ordered by the trial court should be the actual loss or damage incurred by the victim. HRS § 706-605(1)(e); HRS § 706-624(2)(i). *See also State v. Harris,* 70 N.J. 586, 362 A.2d 32 (1976). The language in question in HRS §§ 706-605(1)(e) and 706-624(2)(i) allows the trial court to determine the total amount of restitution and also the manner in which payment is to be made by the Defendant.

Here, there is no dispute that the promissory note evidences the amount of loss the victim suffered due to Defendant's criminal act or conduct. Defendant's argument that $50.00 is the maximum restitution the trial court could have ordered in this case ignores the evidence in the record, Defendant's own admissions, and Defendant's attorney's representations to the trial court of the victim's losses due to the criminal act or conduct of Defendant.

---

[4]HRS § 706-605(1)(e) (Supp. 1984) in relevant parts:

(1) Except as provided in section 706-606 and subject to the applicable provisions of this Code, the court may suspend the imposition of sentence on a person who has been convicted of a crime, may order the person to be committed in lieu of sentence in accordance with section 706-607, or may sentence the person as follows:

. . . .

(e) To make restitution or reparation to the victim or victims of the person's crime in an amount the person can afford to pay, for loss or damage caused thereby in addition to paragraph (a), (b), (c), (d), or (f) of this subsection (1)[.]

[5]HRS § 706-624 (1976 & Supp. 1984) in relevant parts:

(1) When the court suspends the imposition of sentence on a person who has been convicted of a crime or sentences him to be placed on probation, it shall attach such reasonable conditions, authorized by this section, as it deems necessary to insure that he will lead a law-abiding life or likely to assist him to do so.

(2) The court, as a condition of its order, may require the defendant:

. . . .

(i) To make restitution of the fruits of his crimes or to make reparation, in an amount he can afford to pay, for the loss or damage caused thereby[.]

It is clear from the record that although the Adult Probation Division determined that the restitution amount should be $5,406.33 less $75.00, the trial court, based on the evidence and representations made by Defendant's counsel, also determined that the amount of restitution should be $5,406.33 less $75.00.

"The prescription of penalties is a legislative prerogative, *State v. Freitas,* 61 Haw. 262, 267, 602 P.2d 914, 919 (1979), but a sentencing court is nonetheless afforded wide latitude in the selection of penalties from those prescribed and in the determination of their severity." *State v. Murray,* 63 Haw. 12, 25, 621 P.2d 334, 342 (1980). "This authority is normally undisturbed on review in the absence of an apparent abuse of discretion, *State v. Fry,* 61 Haw. 226, 231, 602 P.2d 13, 17 (1979); *State v. Martin,* 56 Haw. 292, 294, 535 P.2d 127-28 (1975), or unless applicable statutory and constitutional commands have not been observed." *Id.* at 25, 621 P.2d at 342-43.

Where a statute is susceptible to more than one interpretation, the court will look to the intent of the legislature. *See Puchert v. Agsalud,* 67 Haw. 25, 34-35, 677 P.2d 449, 456-57 (1984). The committee reports of both the House of Representatives[6] and the Senate[7] clearly indicate that the purpose and intent of HRS § 706-605(1)(e) is to have the convicted person repay society and his victims for his criminal *acts* whenever deemed appropriate by the sentencing court (emphasis added).

---

[6]Hse. Stand. Comm. Rep. No. 425, in 1975 House Journal, at 1148, in relevant parts:
The purposes of this bill is to empower the Courts, in sentencing any person convicted of criminal acts, to make restitution and reparation for loss to or damage inflicted upon the victims of their crimes, a part of such convicted person's sentence.
Reparation and/or restitution by wrongdoers to their victims is basic to justice and fair play. The penal system should not be excluded from this concept. Your Committee believes that by imposing the requirement that a criminal repay not only "society" but the persons injured by the criminal's acts, society benefits not once, but twice. The victim of the crime not only receives reparation and restitution, but the criminal should develop or regain a degree of self respect and pride in knowing that he or she righted, to as great a degree as possible, the wrong that he or she had committed.

[7]Sen. Stand. Comm. Rep. No. 789, in 1975 Senate Journal, at 1132, in relevant parts:
Your Committee finds that in the criminal justice system, the victim of crime is almost always neglected. By requiring the "convicted person" to make restitution and reparation to the victim, justice is served. In so doing, the criminal repays not only "society" but the persons injured by the criminal's acts. There is a dual benefit to this concept: The victim is repaid for his loss and the criminal may develop a degree of self-respect and pride in knowing that he or she has righted the wrong committed.

Obviously, the legislative intent of HRS § 706-624(2)(i) would be the same.

### III.

Defendant contends that the trial court erred in failing to consider Defendant's ability to pay the restitution amount ordered by the court. Defendant argues that the trial court's order did not comport with the language, "in an amount . . . can afford to pay" in HRS § 706-605(1)(e) and HRS § 706-624(2)(i).

Although the trial court may delegate to the Adult Probation Division the function of making recommendations to the court on the amount of restitution and the manner of payment, the court has the exclusive responsibility and function of imposing a sentence. Without express legislative authority, the court cannot delegate the sentencing function to another person or entity. "The requisite specificity should be provided by the sentencing court and ought not to be left to subsequent administrative determination." *State v. Murray, supra* at 25, 621 P.2d at 343 (citations omitted).

The amended judgment dated May 8, 1984 recites the special condition of probation as follows:

A. You shall make restitution in the amount of $5,406.33, less the $75.00 already paid, in a manner to be determined by the Adult Probation Division.

We view the clause, "in a manner to be determined by the Adult Probation Division" to mean the manner of payment of the restitution amount. The manner of payment must be reasonable and one that Defendant can afford taking into account Defendant's financial circumstances. *See State v. Garner,* 115 Ariz. 579, 566 P.2d 1055 (1977); *State v. Harris, supra.*

The record indicates that Defendant was denied an opportunity to challenge the reasonableness of the Adult Probation Division's recommendation relative to the manner of payment of the restitution amount. This infringes on Defendant's right to due process as guaranteed under the Fourteenth Amendment, section 1 of the United States Constitution. *See* Note, *Victim Restitution in the Criminal Process: A Procedural Analysis,* 97 Harv. L. Rev. 931, 944 n. 92 (1984) (*citing Boddie v. Connecticut,* 401 U.S. 371, 377 (1971)).

We hold that it is incumbent upon the trial court to enter into the record findings of fact and conclusions that the manner of payment is

reasonable and one which Defendant can afford. Here, the trial court failed to make such findings and conclusion.

We affirm the total amount of restitution and remand for further proceedings not inconsistent with this opinion.

*Cynthia H. Lee* (*Richard W. Pollack* with her on the briefs), Deputy Public Defender, for defendant-appellant.

*Willard J. Peterson* (*Arthur E. Ross* on the brief), Deputy Prosecuting Attorney, for plaintiff-appellee.

### DISSENTING OPINION OF NAKAMURA, J.

The court affirms "the total amount of restitution" ordered by the circuit court and remands the case for further proceedings to give "Defendant . . . an opportunity to challenge the reasonableness of the Adult Probation Division's recommendation relative to the manner of payment of the restitution amount." Since she was required to make restitution as part of the sentence imposed for committing Theft in the Third Degree, the circuit court, in my opinion, erred in setting the amount of restitution.

When a person who has been convicted of a crime is placed on probation, he may be required "[t]o make restitution of the fruits of his crimes or to make reparation, in an amount he can afford to pay, for the loss or damage caused thereby[.]" Hawaii Revised Statutes (HRS) § 706-624(2)(i). Here, the defendant was adjudged guilty of Theft in the Third Degree, a petty misdemeanor involving the theft of property or services of a value not exceeding fifty dollars. *See* HRS §§ 708-831 to -833. Yet she was ordered to "make restitution to the victim in the amount of $5,406.33 less $75.00." In my view there was no basis for requiring restitution in excess of fifty dollars, and I would vacate the invalid condition of probation imposed by the circuit court.