1 P.3d 760

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Jay Jeffery WERNER, Defendant–Appellant,**

and

**Derek Kirkpatrick, Defendant.**

No. 22503.

Intermediate Court of Appeals of Hawai'i.

May 2, 2000.

Daphne E. Barbee, on the briefs, Honolulu, for Defendant–Appellant.

Alexa D.M. Fujise, Deputy Prosecuting Attorney, City and County of Honolulu, for Plaintiff–Appellee.

BURNS, C.J., WATANABE, and ACOBA, JJ.

Opinion of the Court by BURNS, C.J.

Defendant–Appellant Jay Jeffrey Werner (Werner) appeals from the circuit court's: (1) "Findings of Fact, Conclusions of Law, and Order Denying Motion for Correction of Sentence" filed on March 4, 1999; and (2) "Order Denying Motion for Reconsideration of Findings of Fact, Conclusions of Law and Order Denying Motion for Correction of Sentence" filed on April 29, 1999. We vacate and remand.

## BACKGROUND

On August 21, 1997, pursuant to a plea agreement with the prosecution, Werner pled guilty in two criminal cases, Cr. No. 97–1558 and Cr. No. 97–1561, in each case, to one count of Burglary in the Second Degree, Hawai'i Revised Statutes (HRS) § 708–811

(1993). The terms of the plea agreement are as follows:

1. [Werner] shall plead guilty as charged to all pending criminal cases (Cr. NO. 96–2422, 97–1553, 97–1554, 97–1555, 97–1556, 97–1557, 97–1558, 97–1559, 97–1561 and 97–1322) and shall stipulate to extended term sentencing of 10 years, to run concurrent in all cases; including CR. No. 96–1738.

2. [Werner] shall agree to pay restitution as determined by APD [Adult Probation Division] or the Court in all pending matters;

3. The State of Hawaii [Hawai‘i] will agree not to request any additional enhanced sentencing, such as consecutive terms;

4. The State of Hawaii [Hawai‘i] will dismiss the two cases currently in the Prosecutor's office pending grand jury action . . . ;

5. The State of Hawaii [Hawai‘i] [will] dismiss the five additional cases for which we are awaiting receipt of the police reports for grand jury action . . . ;

6. The State of Hawaii [Hawai‘i] will agree not to prosecute any other burglary cases to which Mr. Werner confessed on or about November 21, 1996, but which have not yet conferred with the prosecutor's office . . . ;

7. There are no other promises, express or implied.

On December 16, 1997, the circuit court entered a judgment finding Werner guilty of Burglary in the Second Degree in Cr. No. 97–1558 and Cr. No. 97–1561 and sentenced him to a total term of 10 years' imprisonment running concurrently with sentences in all other cases. The court also ordered Werner to pay restitution "to be determined by APD and not to exceed one-half the requested amount." In Cr. No. 97–1558, the amount requested was $6,974.41. In Cr. No. 97–1561, the amount requested was $41,620.90. Werner was liable for only a maximum of one-half because there was a co-defendant.

On January 6, 1998, the Adult Probation Division determined that Werner should pay an aggregate amount of $24,297.65 restitution for Cr. No. 97–1558 and Cr. No. 97–1561. In a letter to the probation officer, Werner objected to the restitution amount. His letter states in pertinent part:

Mr. Werner is unable to pay due to his indigent financial status. According to Sec. 706–605(1)(d) HRS, restitution must be in an amount the defendant can afford to pay. *State v. Murray,* 63 Haw. 12, 621 P.2d 334 (1980). Being incarcerated, Mr. Werner does not have the ability to pay $24,297.65.

On February 3, 1998, the circuit court held a hearing to address Werner's objection. The transcript of the hearing states in relevant part as follows:

[COUNSEL FOR WERNER]: —in the interest of time. My client would testify, once he takes the stand and he testifies under oath, that he is incarcerated at Halawa Medium Correctional Facility. That he does not presently have a job at Halawa Medium Correctional Facility. He is in the RAD, what's called a RAD unit, that he has put in for jobs; but he understands due to the overcrowding, they will not assign him a job for approximately three more months. Even if he does get a job, he would earn 25 cents, possibly a dollar a day at the most.

We would ask that Your Honor take judicial notice of the records. This is a court-appointed case. He was deemed indigent by the Public Defender's Office.

He also has a debt of—excuse me, $17,-000 for past-due child support, and he is unable to pay that as well.

And this is what he would testify—excuse me, this is what he would testify to if he were to take the stand in this matter.

. . . .

[COUNSEL FOR THE STATE]: Your Honor, my understanding of this motion is that it's a motion to set the amount of restitution, not the fact of restitution. That's already been decided by this Court, and the Court's already made a ruling on Mr. Werner's ability to pay.

Obviously, Mr. Werner is not going to be in jail forever. This could be lodged as a

civil suit, as a civil judgment, and they can re-up that judgment every ten years and garnish Mr. Werner's wages the rest of his life if they would like to.

. . . .

[COUNSEL FOR WERNER]: Your Honor, as you recall during the sentencing, I brought up the matter of restitution and the Hawaii [Hawai'i] Supreme Court case, *State versus Murray,* 63 [Haw.] 12 [621 P.2d 334], and in that case the Hawaii [Hawai'i] Supreme Court specifically says that restitution has to be in an amount of what the Defendant can afford to pay.

So what they're saying under the law, under the constitution, just because person is poor, they cannot be kept in prison or incarcerated further because of their inability to pay a fine or restitution, that there are no debtors' prisons in the United States of America.

And in this situation look at the factor the Hawaii [Hawai'i] Supreme Court asked the Court to look at in *State versus Murray,* specifically a person's ability to pay, not whether or not there has been any loss, but a person's ability to pay.

The Court should focus in on Mr. Werner's income. And in this situation Mr. Werner has a sentence of ten years. He has no job. He simply cannot afford to pay. He also has debts, and in that situation $24,000 is a not a reasonable amount to set for restitution.

. . . .

THE COURT: All right.

I think we already discussed this at sentencing, and the constitutional concerns were addressed by the Court. And it's true he doesn't have a job because he was a burglar and a very good one at that.

And I already noted during sentencing the nature of the crimes showed a high degree of intelligence, sophistication and ingenuity, all of which will serve Mr. Werner well once he gets out of prison, which may not be for a while probably, given [the] current situation of the paroling authority, [it] may be for five years minimum.

He will get out some day, and he's young, smart, resourceful, and he can make a substantial income, even given his debts. And I think we've already discussed that, and the reason I cut it in half is because I had already taken those into account.

Now, I could have made them joint and several, the whole $40,000, but I said not to exceed $20,000.

[COUNSEL FOR WERNER]: That's correct, Your Honor, and if you note, the Adult Probation went above the $20,000.

THE COURT: Well, I'll limit it to $20,000 restitution.

[COUNSEL FOR THE STATE]: I guess we need a breakdown per case then.

. . . .

THE COURT: . . . .

So it looks like we've got approximately [$]2,000 in [Cr. No.] 97–1558; [$]18,000 in [Cr. No.] 97–1561, or we can do it this way. We can take the requested amounts, ratio them as per [$]20,000 total, and that's in the letter.

On March 4, 1998, the circuit court entered an Amended Judgment in which it decided that the restitution amounts are $2,800 for Cr. No. 97–1558 and $17,200 for Cr. No. 97–1561, a total of $20,000.

On March 23, 1998, in No. 21448, Werner appealed the decision of the circuit court regarding the restitution amounts. On November 12, 1998, after reviewing Werner's appeal, the Hawai'i Supreme Court entered a Memorandum Opinion stating in pertinent part:

Claiming that the circuit court abused its discretion in ordering restitution, Werner maintains there is no factual basis in the record to support the finding that he can afford to pay $20,000 . . . .

. . . .

. . . Based on *[State v. ]Gaylord,* [ 78 Hawai'i 127, 890 P.2d 1167 (1995) ], a sentencing court imposing the restitution sanction pursuant to HRS § 706–605(1)(d) must not only prescribe the manner of payment, but must also enter findings and conclusions that the manner of payment is reasonable and in an amount that the de-

fendant can afford to pay. The record evinces that the sentencing court in the instant case failed to prescribe any manner of payment for the restitution it ordered. The sentencing court's amended judgment simply orders Werner to pay $2,800.00 in Case I and $17,200.00 in Case II, without any instructions as to the method of payment. The transcripts of both the sentencing and restitution hearing further indicate that the issue of the manner of payment was never discussed.

The record also evinces that the circuit court failed to enter sufficient findings or conclusions demonstrating that Werner could afford to pay restitution in the aggregate amount of $20,000.00. As for the circuit court's comments regarding Werner's "industriousness and ingenuity with respect to crime" and his general ability to "make a substantial income," these are not, in our opinion, facts which demonstrate that Werner can *actually* afford to pay restitution. Indeed, we are convinced that the question whether $20,000.00 is an amount that Werner *can afford to pay* is an inquiry that necessarily includes, at a minimum, an analysis of factors showing that Werner presently can afford to pay or will be able in the future to afford to pay $20,000.00. In conducting such an analysis, the court would look to, for example, any assets that Werner owns as well as his past earning capacity and his potential in the future as a wage earner, based on legitimate previous experience, training, and education.

... [N]otwithstanding that the sentencing court may have relied upon Werner's presentence report in ordering restitution, it was nevertheless required, in accordance with *Gaylord*, to enter findings and conclusions specifically illustrating that Werner could afford to pay $20,000.00 in restitution. "Industriousness and ingenuity with respect to crime" and the perceived ability to earn a substantial income based thereon is, in our view, patently insufficient to demonstrate that Werner could afford to pay

restitution in the aggregate amount of $20,000.00.

## IV. *CONCLUSION*

Inasmuch as the restitution order against Werner was illegally imposed, we vacate Werner's amended sentences and remand for resentencing consistent with this opinion.

*State v. Werner*, No. 21448, mem. op. at 9–10, 91 Hawai'i 123, 980 P.2d 997 (Hawai'i, Nov. 12, 1998). (Emphases in original.)

On January 22, 1999, the State filed a Motion for Resentencing. On January 29, 1999, Werner filed a Motion for Correction of Sentence. At the February 23, 1999 hearing on both motions, the court stated in pertinent part: "Well, how about this: ... you pay 10 percent of your annual earnings from whatever source. ... All other provisions of the judgment previously answered remain the same."

On March 4, 1999, the circuit court entered its Findings of Fact, Conclusions of Law, and Order Denying Werner's Motion for Correction of Sentence stating in pertinent part:

## *FINDINGS OF FACT*

1. [Werner] is young, healthy, reasonably intelligent and capable of working upon release from prison.[1]

2. [Werner] is working in prison and is presently making 38 cents a day.

3. [Werner] has a prior history of employment, including Ono Construction as a mason tender, Hawaii Roofing as a roofer, and Island Roofing as a truck driver and journeyman.

4. [Werner] has the support of his family.

5. As part of his plea agreement with the State of Hawaii [Hawai'i], [Werner] agreed, inter alia, to pay restitution as determined by the Adult Probation Division or the Court in all pending matters.

---

1. At the time the court entered the Findings of Fact, Conclusions of Law and Order Denying Motion for Correction of Sentence, Defendant–Appellant Jay Jeffrey Werner (Werner) was 26

years old, his height was five feet six inches, he was 135 pounds, and he had completed tenth grade.

6. In exchange for [Werner's] agreement in the plea agreement, the State of Hawaii [Hawai'i] dismissed nine additional pending cases against [Werner].

7. [Werner] has the ability to pay restitution in the amount of $17,200 in Criminal No. 97–1561 and $2,800 in Criminal No. 97–1558 and has agreed to do so (see No. 5 above).

8. Payment of restitution shall be at the rate of 10 percent of [Werner's] annual income until paid in full. This restitution order shall be a free-standing order, shall survive the expiration of parole, and shall be enforceable as any civil judgment pursuant to Act 269, 1998, Session Laws of Hawaii, and Section 706–605(d), *H.R.S.*

. . . .

10. After release from incarceration, [Werner] shall make payments equal to 10 percent of his annual income. . . . The manner of payment herein is reasonable and in an amount that [Werner] can afford to pay.

11. In the event of changed circumstances, either party may petition the Court to revisit the manner of payment.

### CONCLUSIONS OF LAW

1. [Werner's] income while incarcerated is subject to garnishment for payment of restitution. Sections 353–22 and 353–22.5, *H.R.S.*[2]

2. The manner of payment is reasonable and one which [Werner] can afford. *State v. Gaylord*, 78 [Hawai'i] 127 [890 P.2d 1167] (1995).

3. The amount of restitution is one that [Werner] can afford to pay. *H.R.S.* Section 706–605(1)(d); *State v. Johnson*, 68 Haw. 292, 711 P.2d 1295 (1985); *State v.*

*Murphy [Murray]*, 63 Haw. at 25, 621 P.2d 334 (1980); *State v. Gaylord*, supra.

ACCORDINGLY IT IS HEREBY ORDERED that the Motion for Correction of Sentence be and the same is hereby denied.

(Footnotes added.)

On March 18, 1999, Werner filed a Motion for Reconsideration of Findings of Fact, Conclusions of Law and Order Denying Motion for Correction of Sentence. A hearing was held on April 13, 1999. On April 29, 1999, the circuit court entered the Order Denying Motion for Reconsideration of Findings of Fact, Conclusions of Law and Order Denying Motion for Correction of Sentence.

On May 12, 1999, the circuit court entered an Order of Restitution stating in pertinent part:

[T]he Court orders that [Werner] pay 10 percent of his annual earnings in restitution. This restitution order is separate and apart from and shall survive the Amended Judgment, Guilty Conviction and Sentence filed March 4, 1998. . . .

. . . .

The Court reviewed [Werner's] income, expense, asset, and liability statement in the Pre–Sentence Diagnosis and Report and found that [Werner] will have the ability to make restitution payments in full.[3]

In addition, [Werner] entered into a plea agreement with the State of Hawaii [Hawai'i] wherein he agreed to pay restitution as determined by the Court.

(Footnote added.)

### DISCUSSION

▮ Initially, we note that Finding of Fact No. 8 must be amended to delete the following part in brackets:

ment, levy, or any like process of attachment by the director for a cause of action or claim against the committed person in the following order of priority:
(1) Restitution to victims;
(2) Child support payments by order of the court[.]

---

2. Hawai'i Revised Statutes (HRS) § 353–22 (Supp.1999) states, "No moneys earned by a committed person and held by the department, to any amount whatsoever, shall be subject to garnishment, levy, or any like process of attachment for any cause or claim against the committed person, except as provided for in section 353–22.5."

    HRS § 353–22.5 states in relevant part:
    **Garnishment to cover nonbudgeted costs.**
    All moneys received by windfall or earned by a committed person shall be subject to garnish-

3. The circuit court did not enter its preliminary findings leading to its ultimate finding that Werner will have the ability to make restitution payments in full.

Payment of restitution shall be at the rate of 10 percent of Defendant's annual income until paid in full. [This restitution order shall be a free-standing order, shall survive the expiration of parole, and shall be enforceable as any civil judgment pursuant to Act 269, 1998, Session Laws of Hawaii, and Section 706–605(d), H.R.S.]

The reason for the deletion is this. Act 269, 1998 Haw. Sess. 911, is the source of HRS § 706–646 and –647 (Supp.1999).[4] Act 269 became effective upon its approval on July 20, 1998. Werner's case began on July 1, 1997, and Act 269 does not apply to Werner's case because Act 269 expressly provides that it does not "affect rights and duties that matured, penalties that were incurred, and proceedings that were begun, before its effective date" of July 20, 1998. 1998 Haw. Sess. L. Act 269, §§ 7 and 9 at 914. *State v. Sequeira*, 93 Hawai'i 34, 38, 995 P.2d 335, 339 (App.2000); *State v. Johnson*, 92 Hawai'i 36, 986 P.2d 987 (App.1999). Thus, HRS § 706–647 (Supp.1999) does not apply and the restitution order is not enforceable as a civil judgment.

HRS § 706–605(1)(d) (Supp.1997) authorizes the court to sentence a convicted defendant "[t]o make restitution in an amount the defendant can afford to pay."

HRS § 706–605(1)(d) limits restitution orders to "an amount the defendant can afford to pay." ... Accordingly, "it is incumbent upon the [sentencing] court to enter into the record findings of fact and conclusions that the manner of payment is reasonable and one which [the defendant] can afford." [*State v. JJohnson*, 68 Haw.[ 292] at 297–98, 711 P.2d[ 1295] at 1299 [ (1985) ].

*State v. Gaylord*, 78 Hawai'i 127, 152–53, 890 P.2d 1167, 1192–93 (1995) (footnote omitted).

In his opening brief, Werner states that the "sentencing court did not apply the Hawai'i Supreme Court's analysis of the facts to determine whether [Werner] presently can afford to pay $20,000, such as whether there are any assets [Werner] owns, past earning capacity, and his potential in the future as a wage earner." Furthermore, he argues that "[b]ased upon the lack of evidence presented to indicate [Werner] had financial assets, income and a present ability to pay the restitution order in the amount of $20,000.00, the sentencing court's Findings of Facts and Conclusions of Law pertaining to [Werner's] ability to pay must be reversed as clearly erroneous and not supported by the evidence."

When it decided Werner's initial challenge to the sentence and remanded the case for resentencing consistent with its opinion, the Hawai'i Supreme Court concluded that the circuit court failed (1) to decide the "manner" or "method" of payment, and (2) to enter sufficient findings demonstrating that Werner could afford to pay $20,000 restitution. It stated,

Indeed, we are convinced that the question whether $20,000.00 is an amount that Werner *can afford to pay* is an inquiry that necessarily includes, at a minimum, an analysis of factors showing that Werner presently can afford to pay or will be able in the future to afford to pay $20,000.00. In conducting such an analysis, the court would look to, for example, any assets that Werner owns as well as his past earning capacity and his potential in the future as a

4. Act 269, 1998 Haw. Sess. 911, changed the HRS in relevant part by amending HRS § 706–605 and adding HRS § 706–647 as follows:

**§ 706–605 Authorized disposition of convicted defendants.** (1) ... the court may sentence a convicted defendant to one or more of the following dispositions:

....

(d) To make restitution in an amount the defendant can afford to pay; provided that the court may order any restitution to be paid to victims pursuant to section 706–646 or to the crime victim compensation special fund in the event that the victim has been

given an award for compensation under chapter 351....

....

**§ 706–647 Civil enforcement.** (1) A certified or exemplified copy of an order of any court of this State for payment of a fine or restitution pursuant to section 706–605 may be filed in the office of the clerk of an appropriate court of this State as a special proceeding. The order, whether as an independent order, as part of a judgment and sentence, or as a condition of probation or deferred plea, shall be enforceable in the same manner as a civil judgment.

wage earner, based on legitimate previous experience, training, and education.

*State v. Werner*, No. 21448, mem. op. at 9–10, 91 Hawai'i 123, 980 P.2d 997 (Hawai'i, Nov. 12, 1998) (emphasis in original).

■ As noted above, HRS § 706–605(1)(d) (Supp.1995) authorized the court to sentence a convicted defendant "[t]o make restitution in an amount the defendant can afford to pay." The requirement that the restitution ordered cannot exceed the amount Werner "will be able in the future to afford to pay" does not limit "the future" to any particular time or prohibit an order mandating payment of a percentage of gross income up to a maximum amount.

It is reasonable to assume that "the future" is as long as the court retains jurisdiction in the case. However, the restitution order is a part of the sentence in the criminal case and that sentence is a part of the judgment. Thus, HRS § 657–5 (1993) possibly applies:[5]

**Domestic judgments and decrees.** Unless an extension is granted, every judgment and decree of any court of the State shall be presumed to be paid and discharged at the expiration of ten years after the judgment or decree was rendered. No action shall be commenced after the expiration of ten years after the judgment or decree was rendered or extended. No extension of a judgment or decree shall be granted unless the extension is sought within ten years of the date the original judgment or decree was rendered. A court shall not extend any judgment or decree beyond twenty years from the date of the original judgment or decree. No extension shall be granted without notice and a hearing.

HRS § 706–605(1)(d) authorized the court to order "restitution in an amount [Werner] can afford to pay." This requires the court to predict the uncertain future and determine the relevant time period, the total amount, and the payment schedule.

The wisdom and practicality of requiring the court to decide that a defendant "can afford to pay" a specific amount of money via specified payments during a specified period of time in the future is questionable. This is especially true because, if and when the future facts warrant, the court is authorized to make adjustments favorable to the defendant.[6] Nevertheless, that is what the law requires the court to do.

■ With respect to the payment schedule, ordering Werner to pay ten percent of his gross income satisfies the requirement better than ordering Werner to pay specific monthly payments. Depending on Werner's gross income in the future, a specific monthly payment could be too much or too little. The installment payments adjust to Werner's gross income. The amount of ten percent is not unreasonable, notwithstanding the fact that it is not tax deductible. The finding that Werner "will be able in the future to afford to pay" ten percent of his gross income is not clearly erroneous. The wisdom and net benefit of such a restitution order is the discretionary decision of the legislature and the sentencing court.

■ The problem with the circuit court's order is the finding that Werner "has the

---

5. As a result of Act 269, 1998 Haw. Sess. 911, HRS § 706–647 (Supp.1999) specifies that a "certified or exemplified copy of an order of any court of this State for payment of a fine or restitution pursuant to section 706–605 may be filed … [and] shall be enforceable in the same manner as a civil judgment." However, it may be that the HRS § 657–5 statute of limitations does not apply. As a result of Act 269, the last sentence of HRS § 706–644(4) (Supp.1999) states: "A defendant shall not be discharged from an order to pay restitution until the full amount of the restitution has actually been collected or accounted for."

6. HRS § 706–644(4) (Supp.1997) states that

If it appears that the defendant's default in the payment of a fine or restitution is not contumacious, the court may make an order allowing the defendant additional time for payment, reducing the amount thereof or of each installment, or revoking the fine or restitution or the unpaid portion thereof in whole or in part.

As a result of Act 269, 1998 Haw. Sess. 911, HRS § 706–644 (Supp.1999) states in relevant part that "If it appears that the defendant's default in the payment of a fine or restitution is not contumacious, the court may make an order allowing the defendant additional time for payment,...."

ability to pay restitution in the amount of" $20,000. The circuit court did not comply with the Hawai'i Supreme Court's instruction that the circuit court "was nevertheless required, in accordance with *Gaylord*, to enter findings and conclusions specifically illustrating that Werner could afford to pay $20,000.00 in restitution." This instruction requires the circuit court to determine the relevant time period and Werner's gross income and necessary expenses during that time period.

## CONCLUSION

Accordingly, we vacate the circuit court's "Findings of Fact, Conclusions of Law, and Order Denying Motion for Correction of Sentence" filed on March 4, 1999, and the "Order Denying Motion for Reconsideration of Findings of Fact, Conclusions of Law and Order Denying Motion for Correction of Sentence" filed on April 29, 1999. We remand for further proceedings consistent with this opinion.

Opinion of ACOBA, J., Concurring in Part and Dissenting in Part.

I agree that the findings of fact and conclusions of law did not comply with the Hawai'i Supreme Court's remand order and, therefore, they were insufficient to show Defendant–Appellant Jay Jeffrey Werner (Defendant) could actually pay $20,000 in restitution.

The majority goes on, however, to conclude that the order of the first circuit court (the court) "to pay ten percent of his gross income satisfies the [restitution] requirement better than ordering [Defendant] to pay specific monthly payments[,]" majority opinion at 15, because "[d]epending on [Defendant's] income, a specific monthly payment could be too much or too little." *Id.* I respectfully disagree.

First, I think it is premature to determine whether the percentage method of payment is "reasonable" until after the court has sufficiently determined whether Defendant can actually pay $20,000 in restitution. *See State v. Johnson*, 68 Haw. 292, 297–98, 711 P.2d 1295, 1299 (1985) (holding that "it is incumbent upon the trial court to enter into the record findings of fact and conclusions that the manner of payment is reasonable and one which [d]efendant can afford"). The method of payment may be governed by the amount of restitution ordered, and the latter matter has been remanded.

Second, the Hawai'i Supreme Court has said that "[i]t seems intuitively obvious ... that a sentencing court *cannot* determine restitution 'in an amount the defendant can afford to pay' without determining the manner of payment." *State v. Gaylord*, 78 Hawai'i 127, 153 n. 50, 890 P.2d 1167, 1193 n. 50 (1995) (quoting Hawai'i Revised Statutes § 706–605(1)(9)) (emphasis in original). Since the ultimate amount of restitution is tethered to the manner of payment, both determinations should be reserved for remand.

Third, the manner of payment in the instant case is simply too ambiguous to enforce. The order merely orders "payments equal to 10 percent of [Defendant's] annual income," without specifying whether annual income means gross or net income, whether payments are to be made on a monthly basis, and whether "annual income" is to be determined retroactively. Payment based on a measure of Defendant's total annual income is inherently subject to potential dispute if paid periodically, unless all restitution payments are postponed to the end of a designated "year."

I must disagree, therefore, that the percentage approach is "better" than an order requiring specific monthly payments. Specific monthly payments establish certainty for both victim and defendant, can be conveniently accounted for and verified, and thus, I believe, provide more incentive for compliance, especially when enforced by the court. It is because monthly income may be "too much or too little" that the percentage approach is cumbersome and, I submit, unworkable; any *material* change in financial circumstances may be dealt with in the future by new court orders. *Id.* at 154 n. 50, 890 P.2d at 1194 n. 50 (holding that "the courts have the statutory authority to alter, amend, or revoke restitution orders on the basis of unforseen or changed circumstances

and to impose consequences upon defendants who fail unjustifiably to discharge their obligations thereunder").